**Zuzanne TOCHER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 46568.**

Court of Criminal Appeals of Texas.

Nov. 28, 1973.

Rehearing Denied Dec. 19, 1973.

Lee Chagra, El Paso, for appellant.

Steve W. Simmons, Dist. Atty. and Gary B. Weiser, Asst. Dist. Atty., El Paso, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

The conviction is for murder without malice; the punishment, two and one-half years' imprisonment.

At approximately 1:00 p. m. on August 24, 1971, an officer of the El Paso Police Department responded to an "injured person report" at appellant's home address. Appellant answered the front door and led the officer through the house and into the garage, where the body of her husband, Harry Tocher, was found lying between two automobiles. The officer determined that the man had been dead for some time. He observed several severe gashes and blood on the victim's face and skull. Soon afterward a Justice of the Peace, acting as coroner, and an investigative unit of the El Paso Police Department arrived. Following several hours of investigation at the appellant's residence, she was arrested

for the murder of Harry Tocher. In the course of the ten hour investigation several pieces of physical evidence were seized, and a number of photographs of the body and house were taken.

According to appellant's confession, made and signed on the morning of August 25, 1971, and admitted in evidence at the trial, she had killed Tocher with a baseball bat after an argument, and later dragged the body into the garage. Her confession indicated that she had called the police herself to report the death.

Appellant complains in three grounds of error that five color photographs of the victim's body which were not admitted in evidence were inadvertently taken to the jury room and seen by members of the jury. The photographs, depicting the body as it was found by police at the scene, were offered by the prosecutor early in the trial for purposes of the record only, and were admitted for such purposes. Defense counsel preserved his objection to admitting them in evidence for purposes other than the record.

The record contains what appears to be a written question signed by the jury foreman, filed after the jury had retired to consider guilt or innocence, inquiring about inclusion of the photographs among the exhibits taken to the jury room. The record reflects neither an answer to the question nor any other action taken by the Court. Defense counsel at some later time dictated into the record a motion for mistrial based on inclusion of the photographs among the exhibits seen by the jury, but he did not present evidence in support of the motion.

A motion for new trial with a juror's affidavit attached also appears in the record. If the allegations made therein had been proved the record might well have been perfected. However, the record does not reflect that the motion for new trial was presented to the trial court, that a hearing was had or any evidence produced on the motion, or that the Court ever ruled on the motion for new trial. Allegations in a motion for new trial do not prove themselves. Allsup v. State, 495 S.W.2d 238 (Tex.Cr. App.1973); Mackey v. State, 480 S.W.2d 720 (Tex.Cr.App.1972); Tsamouris v. State, 472 S.W.2d 141 (Tex.Cr.App.1971).[1]

█ Since the record does not by either an informal or a formal bill of exception or in any other way properly present and preserve the matter about which complaint is made, it is not before us for review.

In a separate ground of error appellant alleges that there was jury misconduct, since the jury discussed the effect of their verdict on the time appellant would serve. This ground is only supported by allegations in appellant's motion for new trial, and by the attached affidavit of a juror. For the same reasons discussed in the preceding paragraph, this ground of error cannot be reviewed. Allsup v. State, supra; Mackey v. State, supra; Howard v. State, 383 S.W.2d 597 (Tex.Cr.App.1964).

Appellant says that the trial court erred in failing to suppress certain pieces of evidence. According to uncontroverted testimony, the evidence in question was all obtained during a period of approximately ten hours after police and a Justice of the Peace, acting as coroner, arrived at the appellant's home, where they discovered the body. The evidence shows that appellant summoned the police, and voluntarily led the officer who arrived first to the body. After they had seen the body, the coroner and officers conducted an investigation. In a garbage can police found and seized some bloody rags, a milk carton, and a piece of plastic containing what appeared to be a mixture of blood and water. The

1. We observe that the photographs would have been admissible under our holdings in Terry v. State, 491 S.W.2d 161 (Tex.Cr.App.1973); Martin v. State, 475 S.W.2d 265 (Tex.Cr. App.1972); and Lanham v. State, 474 S.W. 2d 197 (Tex.Cr.App.1971). Lanham and Martin were decided shortly before the trial in this case, while Terry was decided afterwards.

victim's watch and eyeglasses, and a wallet were found in a bathroom of the house. These items were admitted in evidence at the trial as Exhibits 8 through 12, over appellant's objection.

About five hours after the body was discovered, the same Justice of the Peace was called to the police station to administer a magistrate's warning to the appellant, who by this time was under arrest. After administering the warning, the Justice of the Peace issued a search warrant for "weapons and other implements used in the murder of Harry Tocher." Again acting as coroner, the Justice of the Peace proceeded back to the appellant's residence, where officers then took eight photographs of various parts of the home. The photographs were admitted in evidence at the trial as Exhibits 13 through 20, again over appellant's objection.

Appellant complains that Exhibits 8 through 12 were illegally obtained and should have been suppressed.

■ The officers were at the address and entered the house at the behest of appellant. She showed them the body voluntarily. The officers then began conducting an investigation. While the record is not clear on the point, it appears that one or more officers remained at the house during most or all of the ongoing ten-hour investigation. The items constituting State's Exhibits 8 through 12 were found and seized during the early stages of the police investigation, before appellant was arrested. We hold that the search and seizure of these items was proper. Once the officers saw the body, showing signs of foul play, they had a right to conduct an on-the-spot investigation under the emergency exception the Fourth Amendment's warrant requirement. See Corbett v. State, 493 S.W.2d 940 (Tex.Cr.App.1973) and Wayne v. United States, 115 U.S.App.D.C. 234, 318 F.2d 205 (1963).

■ There is a further justification for seizure of State's Exhibits 8 through

12. Art. 49.23, Vernon's Ann.C.C.P., reads:

"The justice shall preserve all evidence that may come to his knowledge and possessions which might in his opinion tend to show the real cause of death or the person who caused such death, and deliver all such evidence to the district clerk, who shall keep the same safely, subject to the order of the court."

This provision authorizes just the kind of search made here. Parsons v. State, 160 Tex.Cr.R. 387, 271 S.W.2d 643 (1953), cert. den., 348 U.S. 837, 75 S.Ct. 36, 99 L. Ed. 660, is closely in point. In that case, officers found notes in a wastebasket and letters in a desk in the apartment of the defendant and her husband while the Justice of the Peace was conducting the inquest. These items of evidence were found admissible. The Court said:

"The justice of the peace and his assisting officers were not therefore bound by the rule governing the action of an officer lawfully present for the purpose of arresting the occupant of the premises.

"On the other hand, it was their duty to conduct the search at the scene of the homicide and to preserve evidence there found which might show that the death was the result of an unlawful and criminal act. The officers were therefore lawfully present in the discharge of their official duties and the search was not unreasonable or unlawful."

In addition to the reason stated above, we hold that Exhibits 8 through 12 were validly seized during a coroner's inquest. See also Brown v. State, 475 S.W.2d 938 (Tex.Cr.App.1971).

■ Appellant claims that the eight photographs of the scene, State's Exhibits 13 through 20, were not within the scope of the search warrant issued by the Justice of the Peace, since they were not "weapons and implements" of the crime as stated in the search warrant. For this reason appel-

lant challenges the photographs as "the product of an illegal search and seizure." These photographs were taken during an investigation which, as we hold above, was legitimate. Further, at the time the photographs were taken the police were on the premises pursuant to a search warrant, the validity of which is unchallenged by appellant. By either measure, the photographs were not the product of an illegal search and seizure. Moreover, the photographs, as identified and described in the testimony of investigating officers, depicted no more than was in plain view at the scene. Cf. McCullough v. State, 461 S.W.2d 404 (Tex.Cr.App.1970). As such, they do not themselves constitute a search and seizure within the meaning of the Fourth Amendment. See Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); Fisher v. State, 291 N.E.2d 76 (Ind.1973).

The judgment is affirmed.

Opinion approved by the Court.

ROBERTS, Judge (concurring).

I concur in the result reached, but I feel that clarification on one of appellant's grounds of errors is necessary.

I refer to the admission of the four photographs "for purposes of the record only" and the subsequent viewing of those photographs by the jury. When the jury inquired of the trial judge concerning these pictures, he should have acted at that point. Art. 36.27, V.A.C.C.P. The proper course of action would have been to respond to the question and then withdraw the exhibits. However, the failure to act was rendered harmless in this case because of the fact that the photographs would have been admissible during the course of the trial for the jury to view. I further question the meaningfulness of admitting evidence "for the record only" in such a case as this, where the purpose for doing so is certainly unclear.

ONION, P. J., joins in this opinion.