668 S.W.2d 715 (1983)
Willie James WASHINGTON, Appellant,
v.
STATE of Texas, Appellee.
No. C14-81-270CR.
Court of Appeals of Texas, Houston (14th Dist.).
May 26, 1983.
Discretionary Review Refused December 7, 1983.
Allen C. Isbell, Houston, for appellant.
Winston Cochran, James A. Moseley, Houston, for appellee.
Before JUNELL, MURPHY and SEARS, JJ.
MURPHY, Justice.
Willie James Washington (Appellant) was convicted by a jury of the voluntary manslaughter of Victor Ray Wells, a detective in the Houston Police Department. The jury assessed seven years' imprisonment as punishment. In appealing the conviction, Appellant raises twelve grounds of error, but he does not challenge the sufficiency of the evidence. We need address only one issue. We sustain grounds of error six through ten relating to the prosecutor's final argument in the punishment phase of the trial, in which the prosecutor referred to an imaginary Christmas card from the deceased to his stepdaughter. We hold that reference was such a grossly improper appeal to the emotions of the jurors as to require reversal for a new trial. Reversed and remanded.
*716 On the night of October 2, 1980, Detective Victor Wells of the Houston Police Department was driving an unmarked car on Harrisburg Street in Houston when he stopped for a red light. He was dressed in plain clothes. Appellant, who was driving a Yellow Cab, stopped for the red light behind Wells' car. Appellant testified that when the light changed to green, Wells did not move his car, so he honked his horn at him. The two cars then proceeded through the intersection and pulled over to the curb. According to the testimony of eyewitnesses, Wells got out of his car and walked up to the driver's side of the taxicab. Appellant testified that Wells was shouting obscenities as he approached the cab and that after he said, "I'm going to teach you goddamn cabbies right now," he reached toward his back. Appellant picked up a pistol he carried in his taxicab, fired the gun and sped away. He testified he did not know he had actually shot anyone. Detective Wells died of the gunshot wound inflicted by Appellant. An autopsy revealed that at the time of his death, Wells' blood alcohol content was .14 per cent. In addition, it was found that Wells was carrying a pistol which was tucked in the back of his waistband. Eyewitnesses Rosa and Cynthia Garcia pursued the cab for some distance and later reported the license plate number to police, who dispatched the information by radio to all patrol units. Appellant was apprehended in another section of Houston when a police officer noticed the cab's license plate number was similar to the one supplied by the Garcias. Appellant was indicted for capital murder.
During the trial, the defense called several witnesses to show the violent personality of Wells in order to validate Appellant's claim of fear when Wells approached his taxicab in a threatening way. Pamela Jones, a neighbor of the Wells family, testified about an incident in which Wells' stepdaughters, Michelle and Christina, had sought refuge in her house after an inebriated Wells had beaten both girls. Another neighbor, Connie Swarts, testified that Michelle once told her the bruises on one of her legs had been caused by Wells. Both witnesses said Wells had a reputation as a violent, disturbed person. Linda Wells, Michelle's mother, testified in rebuttal that after Michelle had been raped by an ex-stepfather, Wells had helped her cope with the experience and that Michelle had received psychiatric care.
A jury found Appellant guilty of voluntary manslaughter. During the punishment phase of the trial, defense counsel concluded his final argument as follows:
I want to say something else to you briefly because I realize my time is running out. I want to thank you jurors, thank you from the bottom of my heart. I know that this is the Christmas season, and you have a lot of commitments at this time for your families and things of that nature. However, I want to suggest to you and ask you please, share that mercy that Christmas time brings to all of us  love, mercy, and walk with your God.
During the final argument of the prosecutor, the following occurred:
MR. POE: You know, the defense attorney brought something up that I want to comment on. He said that this is the Christmas season. He said that you were all in a hurry to get home and get with your commitments and your families. I don't blame you. Victor Wells won't have any more Christmases. He does not have this Christmas to look forward to. Think about that.
I believe from the evidence, and you may recall, that in the trunk they found a Valentine card or birthday card. Imagine, if you would for just a moment, a Christmas card from Victor Wells to his daughter, Michelle. What would that card say? What would the card say if Victor Wells sent his daughter a card this year? Imagine in that Christmas card he put a letter. Just imagine, if you will, Victor Wells writing his daughter, his stepdaughter, Michelle.

*717 Dear Michell 
MR. KAHN: Objection. This is not imaginary.
THE COURT: Overruled. Go ahead.
MR. POE: Dear Michelle, I've never been real good with talking, so I want to put my thoughts down on paper. You know, Michelle, that you are a special child to me, and I wanted to send you this Christmas card and letter because, you see, I won't be there for Christmas this year. I won't be there to see your eyes sparkle with sunshine when you run into our room on Christmas morning and shout, "Mommy, Daddy, it's Christmas." I'll never forget our first Christmas together when we got to enjoy being together as a new family. I loved watching your chubby little hands clap with glee as you ripped open the presents. Oh, how I remember Christine[1] saying, "Did Santa really come?" You and I just looked at each other and smiled. Many times as I was working and solving crimes, my mind drifted back to you and all the problems that you had this year. I know, darling, how you miss grandma and how her death bothered you in February. I know how scared and frightened you were that day when we found you after that assault and how terrified you had been of men ever since. I know how scared all of us were when we found out that Mother had cancer. Dear Michelle, you can overcome all these trials because you are the hope of humanity. But I'm sorry, Michelle, I won't be there to help you. I'm sorry I haven't been the daddy you've always needed. I know I shouldn't have worked two jobs. Daddies should see more of their little girls. I'm sorry I had to work on your birthday, but you know, darling, there are lots of bad people in the world, and being a policeman, I've always wanted to try and help the good people when they were robbed and hurt. Maybe some day our system will change, and they won't let those people loose. I know that you will understand.
I'm sorry I won't be there to change your name as I promised. I'm sorry I'll never see your eyes again or hear you laugh. I'm sorry I won't see you in high school as you grow up. I'm sorry I won't be there to give you the guidance and strength that you need as you enter those teenage years. I'm sorry I'll never be there to watch you marry, and I'm going to miss seeing my grandchildren. I know that they will have your warmth and your strength.
But most of all, Michelle, I'm sorry I won't be there for Christmas. You embody the heart and soul of Christmas.
Precious child, may your fear and anger be healed ever so lovingly, and may your innocent spirit stay kindled in your heart so that all will everlastingly be remembered of the need for more love in this world for little children.
Michelle, please take care of Mommy, and please remember me years from now as the daddy who was also a friend.
Please, ladies and gentlemen, don't get so wrapped up in your own affairs with the Christmas season that you forget the Christmas season for Victor Wells' family. Think about them. At this moment, think about the worth of life. Set the price on life high. Don't set it low. Thank you. (Emphasis added).
Following the close of final arguments, Appellant's counsel moved for a mistrial on the ground that the Christmas card argument was highly prejudicial and improper. The trial judge denied the motion, stating that he was "familiar with a Court of Criminal Appeals opinion wherein the prosecutor offered an imaginary letter to the deceased's *718 child[2] in a plea for law enforcement." No instructions to disregard the argument were given to the jury.
In this appeal, several portions of the argument are attacked on the ground that they unfairly prejudiced the jury against Appellant by referring to facts not in evidence. Specifically, Appellant complains of the claim that Wells treated Michelle as a "special child;" the reference to the experience of Wells and Michelle on their first Christmas together; the explanation for Wells' absence from Michelle's birthday party because he was doing his job as a policeman, helping "good people when they were robbed and hurt;" the fact that Wells thought about Michelle while he was working and solving crimes; and the assertion that Michelle had been terrified of all men since she was assaulted by a former stepfather.
The guidelines for assessing the propriety of jury arguments have been summarized in Alejandro v. State, 493 S.W.2d 230 (Tex.Cr.App.1973). In order to be permissible, the argument must contain only (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) response to argument of opposing counsel; or (4) pleas for law enforcement. Id. at 231. These criteria apply equally to the punishment and guilt-innocence phases of a trial. Brown v. Estelle, 468 F.Supp. 42, 45 (N.D.Tex.1978), aff'd, 591 F.2d 1207 (5th Cir.1979); Houston v. Estelle, 569 F.2d 372, 381 n. 12 (5th Cir.1978). See Prado v. State, 626 S.W.2d 775 (Tex.Cr.App.1982).
We are aware of the fact that in Montelongo v. State, 644 S.W.2d 710 (Tex.Cr.App. 1980), the Court of Criminal Appeals in a 5-4 decision held that an argument quite similar to the one at issue here "was in essence a plea for law enforcement cast in purple prose" and was permissible. Id. at 716. Despite its superficial similarity to the prosecutor's argument in the case at bar, we find the contents and tone of the imaginary Christmas card in Montelongo to be distinguishable in several respects.
The letter in Montelongo was "written" by an unknown person to Christine Montelongo, the deceased daughter of the man accused of her murder. Id. at 715. In this case, the imaginary letter was written by the deceased to his stepdaughter, Michelle, both of whom had been the subject of extensive testimony at trial. In Montelongo, the prosecutor denied that he was alluding to any facts not in evidence, contending instead that he was fabricating the contents of the letter himself. Id. Apparently he reasoned that the references which were creatures of his own imagination were permissible, even though outside the record, whereas references to real facts outside the record would have been prohibited. But see McKenzie v. State, 617 S.W.2d 211, 220 (Tex.Cr.App.1981) (personages and other products of the prosecutor's imagination constituted impermissible argument). On the other hand, in this case the prosecutor did not attempt to make that sort of metaphysical distinction. Indeed, the specific passages attacked by Appellant seem to be subtle attempts by the prosecutor to rehabilitate the deceased, whose character had been impeached by testimony of various defense witnesses who commented on his violent temper, psychological instability, and physical abuse of Michelle and her sister. In light of the extensive discussion during trial of the relationship between Wells and Michelle, certain incidents which focused on that relationship, and character traits of the two people, the "facts" injected by the prosecutor's argument are much more concrete and identifiable than were the purely imaginary allegations in Montelongo.
We do not subscribe to the state's argument that since there were no objections at trial to these specific references, Appellant has not perserved error. It is true that, in general, the failure to timely object to certain comments by a prosecutor *719 constitutes a waiver of error. Duffy v. State, 567 S.W.2d 197, 206 (Tex.Cr.App. 1978) (En Banc). However, if the prosecutor's argument is "so prejudicial that no instruction could cure the harm," the failure to object is not fatal. Curtis v. State, 640 S.W.2d 615, 618 n. 4 (Tex.Cr.App.1982); Plunkett v. State, 580 S.W.2d 815, 823 (Tex.Cr.App.1979). In fact, we can imagine situations in which a defense attorney might consciously refrain from objecting because to do so could call attention to the improper remarks or prejudice his client before the jury for having an attorney who objects constantly. Brown v. Estelle, 468 F.Supp. at 45, 49. We think the closing argument of the prosecutor qualifies as one of those instances. The prosecutor's error was not harmless because the argument, coming at the very end of the punishment phase, had an "obvious effect" on the jury, as shown by the sentence imposed. Thomas v. State, 527 S.W.2d 567 (Tex.Cr. App.1975). The punishment range for one convicted of voluntary manslaughter, a second degree felony, is imprisonment for not more than twenty nor less than two years. TEX.PENAL CODE ANN. §§ 19.04, 12.33 (Vernon 1974). Appellant was sentenced to seven years' imprisonment, even though his record prior to this incident was unblemished. Appellant filed a pre-trial motion for probation. He testified that he had never before been convicted of a felony, and several character witnesses testified on his behalf. The charge of the court on assessment of punishment instructed the jury that it could recommend probation if the punishment did not exceed ten years' imprisonment. See TEX.CODE CRIM. PROC.ANN. art. 42.12, Sec. 3a (Vernon Supp.1982-1983).
Under these circumstances, we are not free to speculate that the prosecutor's argument had no effect on the punishment imposed by the jury and did not cause the jury's rejection of probation for which Appellant was fully eligible. McKenzie v. State, 617 S.W.2d at 221; Irving v. State, 573 S.W.2d 5, 6 (Tex.Cr.App.1978).
Accordingly, we reverse the judgment of the trial court and remand the cause for a new trial.
NOTES
[1] Michelle's stepsister was named Christina, not Christine. This reference to "Christine" could be a slip of Mr. Poe's tongue. Christine Montelongo was the deceased child in the case of Montelongo v. State, 644 S.W.2d 710 (Tex.Cr. App.1980). Montelongo, which involved a strikingly similar jury argument, is discussed at length later in this opinion.
[2] It is apparent the trial court was referring to Montelongo v. State, 644 S.W.2d 710. However, in that case the imaginary letter was written to the deceased, who was a child, and not to the deceased's child.