Ronald K. RISCHE, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–90–00594–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

May 28, 1992.
Rehearing Denied Aug. 6, 1992.

Stanley G. Schneider, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., J. Harvey Hudson, Susan Brown, Asst. Dist. Attys., for appellee.

Before DUNN, DUGGAN and O'CONNOR, JJ.

## OPINION

DUNN, Justice.

A jury convicted appellant, Ronald Rische, of the offense of voluntary manslaughter, and assessed punishment at 12–years confinement and a fine of $1,000. This Court affirmed appellant's conviction in an opinion delivered on January 28, 1988.[1] Appellant then filed a petition for discretionary review with the Court of Criminal Appeals. On June 22, 1988, the Court of Criminal Appeals, without granting, refusing, or dismissing appellant's petition, remanded the cause to this Court for consideration of the parole charge issue in light of the Court of Criminal Appeals' opinion in *Rose v. State*, 752 S.W.2d 529 (Tex.Crim.App.1987). This Court remanded the cause to the trial court for a new trial on punishment only. *Rische v. State*, 757 S.W.2d 518 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd).

Appellant now appeals from his punishment trial, in which the jury again assessed his punishment at 12 years-confinement.

Appellant and the complainant, Gordon Duncan, were co-workers and friends. Over a period of months, appellant had an affair with Duncan's wife. Duncan's wife eventually told Duncan about the affair. Duncan and appellant then engaged in several conversations in which Duncan agreed to return certain items to appellant.

In February of 1985, Duncan telephoned appellant and told him he would be over shortly to return some of appellant's items. Appellant testified that when Duncan arrived, Duncan and appellant engaged in a heated argument over Duncan's wife. Appellant subsequently shot Duncan three times. Appellant was later arrested and charged with murder.

■ In his first point of error, appellant contends the trial court erred in overruling his challenge for cause on juror number 22, Keith Arnold Ashley. In his second point of error, appellant asserts that the trial court erred in refusing to grant him an additional peremptory challenge, because he had to use a peremptory challenge to strike Ashley from the venire.

During the voir dire of the jury venire, the following exchange occurred between defense counsel, Mr. Schneider, and Keith Ashley, juror number 22:

Mr. Schneider: You think you could consider two years probation in a proper case?

Ashley: I'd have to know the facts.

Mr. Schneider: You can conceive in your mind a situation where two years probation would be proper?

Ashley: Like I said, I'd have to know the facts.

Mr. Schneider: Actually I need to know yes or no whether or not right now you could consider.

Ashley: No, I could not consider.

Near the end of voir dire examination, Mr. Schneider informed the trial court that he wished to challenge Ashley for cause. The following exchange occurred between Ashley, Mr. Schneider, the trial court, and the prosecutor:

The Court: Our question is whether you can give fair consideration to the full range of punishment. I think maybe earlier indication was that you would not give fair consideration to 20 years probation. I couldn't hear you.

Ashley: I said I wouldn't give fair consideration. I said I wouldn't consider two years.

The Court: You would just not consider two years?

Ashley: Not consider two years probation.

The Court: You've any question?

---

1. *Rische v. State*, 746 S.W.2d 287 (Tex.App.—Houston [1st Dist.] 1988), *remanded*, 755 S.W.2d 477 (Tex.Crim.App.1988), *rev'd as to punishment*, 757 S.W.2d 518 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd).

Prosecutor: I'm confused. Are you saying that when you go back into the jury room, if you're selected as a juror, you would not even consider two years probation?

Ashley: Well, I'd have to weigh the facts.

Prosecutor: That's what I'm asking. What I'm asking is can you go back in there and can you consider the full range all the way from two years probation to 20 years in the penitentiary?

Ashley: Knowing all the facts.

Prosecutor: Hearing all the facts, you can do that?

Ashley: Yes.

The Court: We don't want anybody doing anything until you hear the facts. You don't know anything about the case, and I don't either. You're telling me that you can go back there and be fair and give fair consideration to the full range of punishment. In other words, you would fairly consider giving two years probation as well as you would 20 years in the penitentiary?

Ashley: That's true.

The Court: Do you have any questions?

Mr. Schneider: Yes Your Honor. You indicted that you could not conceive of a situation where you could consider two years probation for the offense of voluntary manslaughter?

Ashley: That's without knowing the facts, I couldn't consider two years.

Mr. Schneider: Just two years probation, voluntary manslaughter, you could not consider two years probation?

Ashley: Yeah, I couldn't. You kind of confusing me here. You confused me here.

█ Under Tex.Code Crim.P.Ann. art. 35.16(c)(2), a venire member may be challenged for cause if he or she has a bias or prejudice against any of the law applicable to the case. *Goodman v. State,* 701 S.W.2d 850, 859 (Tex.Crim.App.1985). To determine if the trial court abused its discretion in denying a defendant's challenge for cause, we must consider the voir dire in its entirety. *Faulder v. State,* 745 S.W.2d 327, 339–40 (Tex.Crim.App.1987); *Good-*

*man,* 701 S.W.2d at 859. We must determine whether the record reflects the evidence tends to reasonably support the trial court's implied findings that the venire member would be able to perform the tasks that are assigned to jurors in this State. *Johnson v. State,* 773 S.W.2d 322, 325 (Tex. Crim.App.1989). An appellate court must "especially accord due deference to the trial court given its position to gauge the prospective juror's demeanor." *Goodman,* 701 S.W.2d at 859.

Based on the totality of the voir dire, we find that Ashley would have listened to all the facts and evidence before deciding what punishment appellant should be assessed. Ashley indicated that he would follow the law applicable to punishment for voluntary manslaughter, and consider the full range of punishment—from two years probation to 20–years confinement. When Mr. Schneider questioned Ashley about whether or not he could consider two years probation *right now,* Ashley interpreted the question as asking him if he would consider a two-year probated sentence without hearing all the facts and evidence. Ashley indicated he would not consider *any* punishment until he had heard all the evidence.

We hold that the trial court did not abuse its discretion in denying appellant's challenge for cause on juror number 22, Keith Arnold Ashley. *See Faulder,* 745 S.W.2d at 340; *Barney v. State,* 698 S.W.2d 114, 124 (Tex.Crim.App.1985).

Appellant's first and second points of error are overruled.

█ In his third point of error, appellant asserts that the trial court erred in excluding from evidence letters written by witness Sharon Duncan Ward, which defense counsel would have used to impeach Sharon Duncan Ward, the wife of the deceased. Specifically, appellant contends the letters were relevant under rule 401 of the Texas Rules of Criminal Evidence, and therefore were admissible and should not have been excluded from evidence.

The determination of admissibility is within the sound discretion of the trial

court and will not be reversed on appeal unless a clear abuse of discretion is shown. *Werner v. State,* 711 S.W.2d 639, 643 (Tex. Crim.App.1986); *Jackson v. State,* 575 S.W.2d 567, 570 (Tex.Crim.App.1979). Evidence is relevant if it has "any tendency to make the evidence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R.CRIM.EVID. 401.

A party may not impeach a witness on a collateral matter. *Ramirez v. State,* 802 S.W.2d 674, 675 (Tex.Crim.App.1990). The test as to whether the matter is collateral is whether the cross-examining party would be entitled to prove it as a part of his case tending to establish his plea. *Id.* Great latitude should be allowed a defendant to show a witness' bias or motive to testify falsely against him. *Bates v. State,* 587 S.W.2d 121, 133 (Tex.Crim.App.1979). However, trial courts have considerable discretion on how and when bias may be proved and about what evidence is material for that purpose. *Id.*

Appellant contends the letters should have been admitted into evidence to show: 1) Sharon Duncan Ward had a motive to "shade the truth," so she could "get" the person who killed her husband; and 2) the victim had a motive to become violently angry with appellant and to attack him on the day the victim was shot and killed. Although we do not have the letters before us, appellant's counsel, in his written brief and during oral argument before this Court, asserts that the letters contained language that would have shown that the affair between appellant and Ward lasted longer than Ward testified that it lasted, and would have shown that the affair was more passionate than Ward testified it had been.

We hold the trial court did not abuse its discretion in excluding the letters from evidence. Although we do not have the letters before us, we find that the letters were not relevant because they did not have a tendency to make the existence of any fact that is of consequence to the determination of the action more or less prob-

able than it would have been without the letters. It had previously been shown that Ms. Ward had an affair with appellant, and that appellant shot and killed her husband. Based upon appellant's written brief and statements at oral argument, the matter contained in the letters was already in evidence—appellant had an affair with Ms. Ward. It had also previously been shown that the deceased had a possible motive to become violently angry with appellant and possibly attack appellant on the day of the shooting because the evidence showed that Gordon Duncan knew about the affair between appellant and his wife. The letters were not relevant concerning what occurred during the fatal meeting between appellant and Gordon Duncan. Because the letters were not relevant, they were not admissible into evidence. TEX.R.CRIM.EVID. 402.

Even if the letters were relevant for purposes of impeachment of Ms. Ward, regarding when the affair ended, we find that the issue of when the affair ended was a collateral matter. Appellant would not have been entitled to prove the contents of the letters to establish his contention that the reason he shot Gordon Duncan was because Duncan attacked him. The letters proved that Duncan's wife and appellant had an affair. They did not show that Duncan attacked appellant or that Duncan planned to attack appellant. Because a party may not impeach a witness on a collateral matter, the trial court did not err in excluding the letters for impeachment purposes. *Ramirez,* 802 S.W.2d at 675.

Appellant's third point of error is overruled.

In his fourth point of error, appellant contends that the trial court erred in overruling his requested jury charge on punishment to include the elements of voluntary manslaughter.

This Court remanded this cause to the trial court for the punishment phase of the trial under authority of TEX.CODE CRIM. P.ANN. art. 44.29(b) (Vernon Supp.1992). That article provides:

If the court of appeals or the Court of Criminal Appeals awards a new trial to a defendant other than a defendant convicted of an offense under Section 19.03, Penal Code, only on the basis of an error or errors made in the punishment stage of the trial, the cause shall stand as it would have stood in case the new trial had been granted by the court below, except that the court shall commence the new trial as if a finding of guilt had been returned and proceed to the punishment stage of the trial under Subsection (b), Section 2, Article 37.07, of this code. If the defendant elects, the court shall empanel a jury for the sentencing stage of the trial in the same manner as a jury is empaneled by the court for other trials before the court. At the new trial, the court shall allow both the state and the defendant to introduce evidence to show the circumstances of the offense and other evidence as permitted by Section 3 of Article 37.07 of this code.

TEX.CODE CRIM.P.ANN. art. 44.29(b) (Vernon Supp.1992).

No language in this article can be construed as requiring a trial court to include the elements of an offense in the jury charge on the punishment phase of the trial. The legislature could have required the trial court to include the elements of the offense in the punishment phase jury charge as it requires the trial court, if requested by the defendant, to empanel a jury for the punishment phase of the trial in the same manner as it empanels juries for other trials, but it chose not to do so.

Appellant cites no authority for the proposition that, when a retrial is held on the issue of punishment only, a trial court errs by not reciting, in the charge on punishment, the elements of the offense of which appellant has been found guilty. The charge in this case set out all the information the jury needed to assess punishment. The charge recited that appellant had been convicted of voluntary manslaughter, and charged the jury as to the range of punishment it could assess, including probation.

Because the legislature does not require a trial court to include the elements of an offense in a charge on punishment only, and because appellant cites no authority holding that the trial court must include the elements of an offense in a punishment phase jury charge, we decline to so hold.

We also note that the dissent offers no policy reasons for requiring a trial court to include the elements of the offense in a charge on only punishment. The dissent states no reasons why a jury imposing *punishment only* should be told what elements the first jury found in determining *guilt.* The jury assessing punishment heard all the facts of this case through testimony presented to them at trial. The jury charge set out the range of punishment the jury could assess and informed the jury that appellant had been convicted for voluntary manslaughter. Therefore, the jury had before it all that was necessary to decide what punishment to assess appellant.

 Even if the trial court erred in failing to include the elements of voluntary manslaughter in the punishment phase jury charge, we find the error was harmless. *See* TEX.R.APP.P. 81(b)(2). Both the prosecutor and the defense counsel instructed and questioned the venire members on the elements of voluntary manslaughter during voir dire examination. The prosecutor told the jury panel that "voluntary [manslaughter] is death caused under the immediate influence of sudden passion arising from an adequate cause." Therefore, the jury knew what the elements of voluntary manslaughter were, and was instructed to assess punishment for that offense only. Appellant may not now complain that the jury did not know the elements of voluntary manslaughter when assessing punishment, when his own counsel instructed and explained the elements of the offense to the jury panel. We hold that the error, if any, made no contribution to the punishment assessed appellant.[2] TEX.R.APP.P. 81(b)(2).

---

2. The dissent fails to show how appellant was harmed by the trial court's refusal to set out the elements of voluntary manslaughter. We note that the first jury assessed appellant's punishment at 12–years confinement and a $1,000 fine, while the second jury assessed punishment at

Appellant's fourth point of error is overruled.

In his fifth and sixth points of error, appellant asserts that his right to a fair trial, as guaranteed under the United States and Texas constitutions, was abrogated by the failure of the Houston Police Department to conduct an adequate investigation into the facts and circumstances of the offense.

■ Appellant's argument and authorities under these points of error go to whether error occurred during the guilt-innocence phase of his trial. As noted above, appellant is now appealing from the retrial of only the punishment phase of his trial. Appellant may not assert any error that occurred during the guilt-innocence phase of his trial, when he is appealing from the retrial of only the punishment phase of his trial. The guilt-innocence phase of appellant's trial has previously been appealed, and his conviction affirmed by this court. *Rische v. State*, 746 S.W.2d 287 (Tex.App.—Houston [1st Dist.] 1988), *remanded*, 755 S.W.2d 477 (Tex.Crim.App. 1988), *rev'd as to punishment*, 757 S.W.2d 518 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd).

Appellant's fifth and sixth points of error are overruled.

■ In his seventh point of error, appellant contends that the trial court erred in overruling his objection to the State's closing argument regarding what the deceased would have said had he testified.

The prosecutor made the following statements during closing argument:

What I was waiting to hear all day yesterday was what a model citizen Ron Rische has become after this. He's had five years, he's had five years than most defendants ever get. What has he done? Well, he didn't work. Doesn't want to be part of the rat race. Doesn't want to do what you and I do every day. He doesn't want to go to counseling because he can't afford it, but that's because he

won't work. What else has he done? He sat in his apartment it sounds to me. Where's the model citizen? Where's the guy that's an asset to our community? He's had five years to make himself that and he hasn't done it. You know why? Because he wants you to feel sorry for him. He wants to be the victim in this case instead of Gordon Duncan. Poor pitiful me, I had an affair with my best friend's wife and gosh dang if he didn't find out and she left me. Poor pitiful me, maybe I'll kill myself. Poor pitiful me, I don't want to go to the Texas Department of Corrections, and I'm going to say anything in order to stay away from there.

It's about time that somebody said poor pitiful Gordon Duncan. He's our model citizen. He's the productive guy in this situation. He's the guy who didn't do anything wrong. Think about it ladies and gentlemen. Gordon Duncan didn't get to come in here, he didn't get to take that oath and sit on that witness stand. He did not get to tell you what he thinks Ronald Rische—

At that point, defense counsel objected on the grounds that the prosecutor was inviting the jury to speculate on testimony not in evidence, and that it was improper argument to suggest to the jury what someone else might say. The trial court overruled this objection.

Jury argument must fall within one of the following general areas to be proper: 1) summation of the evidence; 2) reasonable deductions from the evidence; 3) answers to the argument of opposing counsel; and 4) pleas for law enforcement. *Albiar v. State*, 739 S.W.2d 360, 362 (Tex.Crim. App.1987).

We hold that the prosecutor's statements constituted a plea for law enforcement and answers to defense counsel's argument. When viewing the entire argument, we find that the prosecutor was asking the jury to assess punishment at confinement instead of giving appellant probation. Defense

12–years confinement. Therefore, the error, if any did not make a contribution to the punish-

ment assessed appellant. Tex.R.App.P. 81(b)(2).

counsel had argued that appellant should receive probation because he needed treatment to become a productive member of the community again, and that he could not receive that treatment in prison. The prosecutor asked the jury to consider that the victim, Gordon Duncan, was a model citizen, and that he could not testify. The prosecutor was arguing for the jury to consider Duncan's character, and assess a greater punishment than the one defense counsel requested. *See Hill v. State*, 755 S.W.2d 197 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd).

Appellant asserts that this case is analogous to *Washington v. State*, 668 S.W.2d 715 (Tex.App.—Houston [14th Dist.] 1983, pet. ref'd). In *Washington*, the prosecutor, during closing argument, asked the jury to imagine that the deceased wrote a Christmas card to his daughter. *Id.* at 716–17. There was no evidence that the deceased wrote a Christmas card to his daughter. *Id.* at 716–18. The prosecutor then argued that the deceased would have written certain statements in the imaginary Christmas card, such statements being facts that were not in evidence. *Id.* at 717–18. The court held that the prosecutor's statements were not proper jury argument because the prosecutor injected facts not in evidence. *Id.* The prosecutor could not try to inject testimony from the deceased that was not in evidence. *Id.*

We find that this case is distinguishable from *Washington*. Here, the prosecutor did not inject new facts that were not in evidence. She did not argue that Gordon Duncan would have made certain statements had he been able to testify. The prosecutor did no more than argue that the jury should consider the character and record of Gordon Duncan, and assess appellant's punishment at confinement instead of probation.

Appellant's seventh point of error is overruled.

In his eighth point of error, appellant asserts that the trial court erred in overruling his objection to statements made by the prosecutor during closing argument. Specifically, appellant asserts the prosecutor's statements, during the closing argument, were improper because she argued that appellant killed the deceased so he could have the deceased's wife. Appellant contends that the prosecutor argued that appellant was actually guilty of murder, and that the jury should punish appellant for murder instead of voluntary manslaughter.

During her closing argument to the jury, the prosecutor made the following statements:

I will tell you right here and right now that this is not a probation case. It's not a probation case because on February 18, 1985, Ronald Rische sat in his apartment, had a couple drinks and waited for Gordon Duncan. Got his gun out and to make it sound good, I was thinking about killing myself, but I couldn't do it. I couldn't kill myself, I feel so guilty and so horrible and so disgusted with myself that I want to end it all, but I can't do it. But I can make it better. If I get rid of Gordon, then I can have what I want, I can have Sharon, the true love of my life. And all I have to do is get rid of Gordon and then I'm happy.

At that point, defense counsel objected on the ground that the prosecutor was arguing that appellant committed murder because the killing was voluntary and planned. The trial court overruled the objection, but instructed the jury that appellant was charged with voluntary manslaughter.

We hold that the prosecutor's statements were proper because they constituted reasonable deductions from the evidence, a plea for law enforcement, and an answer to the defense counsel's jury argument. The prosecutor never asked the jury to assess punishment for murder, nor did she argue that appellant committed murder. The prosecutor explained to the jury why she thought the circumstances surrounding Gordon Duncan's death called for the jury to assess punishment at confinement instead of probation. Defense counsel had argued that appellant should receive probation and that the reason appellant had his gun out before Duncan arrived was be-

cause he had thought about committing suicide. The prosecutor responded by arguing that appellant should not receive probation, and by arguing that appellant may have thought about committing suicide, but he later thought it would be better to kill Duncan.

The evidence shows that appellant was drinking the day he shot and killed Duncan. The evidence shows that appellant had his gun loaded and ready to use before Duncan arrived. The evidence shows that appellant and Duncan's wife were having an affair. The prosecutor could reasonably deduce from this evidence that appellant was thinking of killing Duncan so he could "have" his wife.

 Even if the statements were not proper jury argument, we find that the error was harmless. The Court of Criminal Appeals has held that the TEX.R.APP.P. 81(b)(2) harmless error analysis applies to jury argument. *Orona v. State*, 791 S.W.2d 125, 129-30 (Tex.Crim.App.1990). To determine whether jury argument error is harmless, we must calculate the probable impact on the jury in light of the existence of other evidence. *Id.* at 130. Other evidence is the entire record. We must examine the source of the error, whether or to what extent it was emphasized by the prosecutor, and its probable collateral implications. *Id.* Also, we must consider how much weight a juror would probably place on the error, and whether declaring the error harmless would encourage the State to repeat it with impunity. *Id.* We must determine whether the error might possibly have prejudiced the jurors' decision, and whether the jurors were able to properly apply the law to the facts in order to reach a verdict. *Id.*

Viewing the entire record, we find that the error did not prejudice the jurors' decision, and that the jurors were able to properly apply the law to the facts. The range of punishment the jury could have assessed appellant was between two years and 20 years. The jury assessed punishment within this range. In fact, appellant received a lesser sentence from the second jury that assessed his punishment than the first jury

that assessed his punishment. This jury assessed punishment at 12 years. The first jury that decided appellant's punishment had assessed a punishment of 12 years confinement and a $1,000 fine. Considering the fact that the jury did not assess appellant's punishment at the top of the possible range of punishment, we find that the jury probably placed little, if any, weight on the error, and that the impact on the jury was slight, if in fact there was any impact at all. Declaring this error harmless would not encourage the State to repeat it with impunity.

Appellant's eighth point of error is overruled.

 In his ninth point of error, appellant contends the trial court erred in overruling appellant's motion for mistrial after the prosecutor argued that appellant had taken the deceased's life.

The prosecutor made the following statements during closing argument:

Ladies and gentlemen, when you go back into the jury room, don't forget what he did on February 18, 1985. You call it voluntary manslaughter if that's what you want to call it, but don't forget that he took Gordon Duncan's life.

At that point, defense counsel objected on the ground that the prosecutor was inviting the jury to disregard his guilt for voluntary manslaughter by calling what appellant was guilty of whatever the jury wanted to call it. The trial court sustained defense counsel's objection and instructed the jury that appellant had been convicted of voluntary manslaughter. The trial court granted defense counsel's request to instruct the jury to disregard any comments made by the prosecutor to consider any other offense. The trial court also granted defense counsel's request that the jury disregard the statements made by the prosecutor as set out above. The trial court denied defense counsel's request for a mistrial.

We hold that the statements made by the prosecutor were proper as a summation of the evidence and a plea for law enforcement. The prosecutor did not ask the jury to consider assessing punishment for an

offense other than voluntary manslaughter. The prosecutor told the jury that even though appellant had been found guilty of voluntary manslaughter, the jury should remember that appellant took Duncan's life when deciding what punishment to assess appellant. The evidence showed that appellant did in fact take the life of Duncan. The prosecutor did no more than ask the jury to consider this fact when assessing punishment.

■ Any error from improper jury argument is ordinarily cured when the trial court instructs the jury to disregard the improper jury argument, unless the statements are so inflammatory that their prejudicial effect cannot reasonably be removed by such an instruction. *Andujo v. State*, 755 S.W.2d 138, 144 (Tex.Crim.App.1988).

■ Even if the prosecutor's statements were improper because they constituted a request that the jury consider an offense other than voluntary manslaughter when assessing punishment, we find that the instruction to the jury to disregard the improper statements cured any error. The statements were not so inflammatory that their prejudicial effect was not removed by the instruction to disregard. The prosecutor, after the jury was instructed to disregard, did not continue to request that the jury consider an offense other than voluntary manslaughter when assessing punishment. The prosecutor did not engage in a pattern of conduct that was calculated to inflame the jury.

Appellant's ninth point of error is overruled.

In his tenth point of error, appellant asserts that he was deprived of effective assistance of counsel at the guilt-innocence phase of his trial because his attorney requested a charge on voluntary manslaughter, even though there was no evidence to support a voluntary manslaughter charge.

For the reasons set out under appellant's fifth and sixth points of error, we do not address appellant's tenth point of error.

Appellant's tenth point of error is overruled.

The judgment is affirmed.

O'CONNOR, J., dissents.

O'CONNOR, Justice, dissenting.

The question: Is a defendant, who is retried on punishment only, entitled to have the jury instructed on the elements of the crime for which he was found guilty? Both the appellant and the State concede that this is a case of first impression.

I dissent from the majority's holding on points of error four, eight, and nine. In point four, the appellant contends that the trial court erred in refusing to charge the jury about the elements of voluntary manslaughter; in points eight and nine, the appellant contends the prosecutor argued that the appellant committed murder, not voluntary manslaughter. I agree with the appellant that the combined effect of these errors prevented the jury from understanding the appellant's culpability for voluntary manslaughter.

On the retrial of the punishment issue only, the trial court received evidence about the crime and evidence relative to punishment, and submitted the issue of punishment to the jury. The charge recited that the appellant had been convicted of voluntary manslaughter, and charged the jury as to the range of punishment it could assess. The charge did not inform the jury of the level of culpability involved in the finding of voluntary manslaughter by the first jury. The appellant requested the court in writing to submit a special charge defining voluntary manslaughter. The court overruled the request.

I would hold that, at a minimum, when a jury is asked to determine punishment only, it must be informed of the elements of the crime for which the first jury found the defendant guilty. In a trial in which the jury both assays the guilt and imposes the punishment, it is not necessary for the jury to be instructed at the punishment stage on the elements that resulted in the finding of guilt. When such a jury sits to determine punishment, it is fresh from the

trial on guilt where the court recently instructed it on the elements of the crime. Here, the jury that imposed punishment was never instructed by the court on the elements of the crime and was not told what level of culpability the first jury was required to find before it could find the appellant was guilty of voluntary manslaughter.

The majority not only finds that it was not error to refuse to tell the jury what elements were involved in the appellant's finding of guilt, it even goes so far as to find that if error, it was harmless. The majority finds comfort of sorts in the fact that the prosecutor and the defense counsel told the members of the venire about the elements of voluntary manslaughter during voir dire examination. The prosecutor told the jury panel that "voluntary [manslaughter] is death caused under the immediate influence of sudden passion arising from an adequate cause." The majority concludes that, because the venire panel was told orally by the prosecutor before the trial started about voluntary manslaughter, the jury knew the elements of voluntary manslaughter. I would hold that the discussion by the prosecutor and even the defense during voir dire, before the actual trial started, was no substitute for an instruction from the court. The voir dire began on June 25, 1990, and final arguments were made on July 2, 1990, eight days later. Casual discussions about the law by the lawyers during voir dire is no substitute for instructions from the court.

The majority also finds comfort in the fact that the first jury and the second jury assessed the appellant's punishment at 12 years. Maj. op. at 942, n. 2. This Court found the first sentence was tainted by error and reversed for re-trial on punishment only. *Rische v. State,* 757 S.W.2d 518, 520–21 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd) ("[W]e cannot determine beyond a reasonable doubt that the error made no contribution to the punishment assessed.") The majority should not harken back to that discredited sentence to justify the sentence of this jury when analyzing a different error.

The error in refusing to charge the jury on the elements of voluntary manslaughter was compounded in this case by the prosecutor's closing argument. In point of error eight, the appellant asserts the prosecutor's closing argument was improper because she argued that the appellant killed the deceased so he could have the deceased's wife. The Appellant contends that the prosecutor argued that the appellant was actually guilty of murder, and that the jury should punish the appellant for murder instead of voluntary manslaughter.

During her closing argument to the jury, the prosecutor made the following statements:

I will tell you right here and right now that this is not a probation case. It's not a probation case because on February 18, 1985, Ronald Rische sat in his apartment, had a couple drinks and waited for Gordon Duncan. Got his gun out and to make it sound good, I was thinking about killing myself, but I couldn't do it. I couldn't kill myself, I feel so guilty and so horrible and so disgusted with myself that I want to end it all, but I can't do it. But I can make it better. If I get rid of Gordon, then I can have what I want, I can have Sharon, the true love of my life. And all I have to do is get rid of Gordon and then I'm happy.

The defense counsel objected on the ground that the prosecutor was arguing that the appellant committed murder because the killing was voluntary and planned. The trial court overruled the objection, but told the jury that the appellant was charged with voluntary manslaughter.

The prosecutor also made the following statement during closing argument:

Ladies and gentlemen, when you go back into the jury room, don't forget what he did on February 18, 1985. You call it voluntary manslaughter if that's what you want to call it, but don't forget that he took Gordon Duncan's life.

The defense counsel again objected on the ground that the prosecutor was inviting the jury to disregard the appellant's guilt for voluntary manslaughter by calling

what the appellant was guilty of whatever the jury wanted to call it. The trial court sustained defense counsel's objection and instructed the jury that the appellant had been convicted of voluntary manslaughter. The trial court granted defense counsel's request to instruct the jury to disregard any comments made by the prosecutor to consider any other offense. The trial court also granted defense counsel's request that the jury disregard the statements made by the prosecutor as set out above. The trial court denied defense counsel's request for a mistrial.

I would hold the statements made by the prosecutor were not proper as a summation of the evidence. When coupled with the refusal of the trial court to define the elements of voluntary manslaughter, the prosecutor's arguments invited the jury to punish the appellant as if he had committed murder.

I would sustain points of error four, eight, and nine and reverse for a new trial on punishment only.