Danny Lee MIXON, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–04–00027–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 3, 2005.

Allen C. Isbell, Houston, for appellant.

Peyton Peebles, III, Houston, for appellee.

Panel consists of Justices YATES, EDELMAN, and GUZMAN.

## MAJORITY OPINION

### LESLIE BROCK YATES, Justice.

Appellant Danny Lee Mixon was convicted of murder and sentenced to life in prison. In two issues, appellant argues the trial court erred by: (1) allowing an attorney to testify during the guilt phase of trial in violation of the attorney-client privilege and (2) overruling appellant's objections to improper jury argument during the punishment phase of trial. We affirm.

### BACKGROUND

Appellant took a hand gun from Northshore Video, the store where he worked, drove to a trailer where Connie Gomez and Dwayne Ramdhanny were finishing a meal, and knocked on the door. When Gomez and Ramdhanny opened the door, appellant fired a shot that hit Ramdhanny in the face after traveling through Gomez's hand, which was outstretched because Gomez attempted to intervene. Ramdhanny retreated into the trailer, where appellant followed him and shot him several more times. Gomez ran to the bathroom, closed the door, and hid in the shower. Appellant stood at the bathroom door, fired the remaining bullets from the gun, and left the trailer. Ramdhanny's injuries were fatal, but Gomez survived.

### Attorney–Client Privilege

In his first issue, appellant argues the trial court erroneously allowed an attorney, Peter Heckler, to pierce the attorney-client privilege during the guilt stage of trial by testifying that appellant asked him to conceal the murder weapon. Peter Heckler was the attorney of record for Northshore Video, where appellant worked, and the owner of the gun kept at the store. Heckler testified that appellant sought legal advice and possible representation following the murder. Heckler explained to appellant that if his gun was the murder weapon, he could not represent appellant. Heckler testified that appellant asked him not to turn the gun over to the police, which Heckler ultimately did. Prior to Heckler's testimony before the jury, the court held a hearing outside the presence of the jury to "give some guidance to the lawyers trying the case as to what type of evidence will be admissible." At that time, appellant argued Heckler's testimony was a violation of the attorney-client privilege. The trial court stated appellant's "objection [was] well taken," but ruled the evidence was admissible. When Heckler testified before the jury, appellant failed to pursue his objection.

█ Initially, we address the State's preservation argument. The State contends appellant failed to preserve error by not pursuing his objection before the jury. To properly preserve error for appellate review, the complaining party must make a timely, specific objection. TEX.R.APP. P.

33.1(a). However, when the court hears and overrules objections to evidence outside the jury's presence, those objections need not be repeated when the evidence is actually presented to the jury in order to preserve error. TEX.R. EVID. 103(a); *Ethington v. State*, 819 S.W.2d 854, 858 (Tex.Crim.App.1991). Therefore, by making an objection outside the presence of the jury, appellant preserved error.

 Appellant contends his conversation with Heckler is protected by the attorney-client privilege. *See* TEX.R. EVID. 503. Invocation of the privilege depends on the existence of an attorney-client relationship, which has been defined as a contractual relationship where an attorney agrees to render professional services for a client. *State v. Martinez*, 116 S.W.3d 385, 392 (Tex.App.-El Paso 2003, no pet.); *Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld*, 105 S.W.3d 244, 254 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). The relationship may be expressly created by contract, or it may be implied from the actions of the parties. *Martinez*, 116 S.W.3d at 392. Texas Rule of Evidence 503 protects confidential communications made for the purpose of facilitating the rendition of professional legal services to the client. TEX.R. EVID. 503(b)(1); *Huie v. DeShazo*, 922 S.W.2d 920, 922 (Tex.1996).

Here, the evidence does not conclusively establish an attorney-client relationship between Heckler and appellant. While appellant sought representation from Heckler, Heckler testified that he told appellant he could not represent him if Heckler's gun from the video store was used to commit the crime because Heckler could be called as a fact witness. After speaking with appellant over the telephone, Heckler went to the store, picked up the gun, and stored it in a safe place. Ultimately,

Heckler turned the gun over to the police. Heckler also testified about a videotape security system in the store. He stated that appellant had asked him to destroy the video from the day of the murder. Heckler testified that the video that day could not be found. Heckler's testimony does not support a finding that an attorney-client relationship existed. Because no relationship was established, the trial court did not abuse its discretion in admitting Heckler's testimony. *See Jackson v. State*, 516 S.W.2d 167, 175 (Tex.Crim.App. 1974) (when a fact issue is raised with regard to attorney-client privilege, it is within trial court's discretion to determine whether attorney-client relationship existed). Appellant's first issue is overruled.

## Improper Jury Argument

In his second issue, appellant argues the trial court erred by overruling appellant's objections to improper jury argument portraying appellant as a member of a racist group who committed a hate crime. Appellant complains of the following argument made by the prosecutor in the punishment phase:

THE STATE: But you can't live in this world and not recognize that there are a group of people who are taking that label, "Southern good ol' boys," and flashing it over a big Confederate flag and meaning something, whatever they wanted that expression to mean.

DEFENSE COUNSEL: If it please the Court, this is not supported by any of the evidence. We object to the form of the argument, Your Honor.

THE COURT: Overruled.

THE STATE: You can say to yourself that it's a coindence (sic) that the victim in this case was an African–American man. If the shooter comes

over there with the shaved head and flag on his shoulder, you can think that's a coincidence if you want to, but I submit to you it is no coincidence. What happens in this case is that that man was hanging out at the house behind that trailer and went over there and shot himself a black man and probably had an audience when he did it. Don't you know all those other kids over there with the Southern boys' tattoos and skinheads were standing over there cheering him on? Don't you know they were? I have no doubt.

DEFENSE COUNSEL: If it please the Court, there's no evidence to support any of that testimony at all. I object.

THE COURT: Overruled.

▮ Appellant contends the State's argument was improper because there was no evidence that (1) appellant behaved toward anyone in a racist manner or (2) appellant was cheered by an audience when the shooting occurred. Proper jury argument must fall into one of four general categories: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answers to argument of opposing counsel, or (4) pleas for law enforcement. *Guidry v. State*, 9 S.W.3d 133, 154 (Tex.Crim.App.1999). The prosecutor may draw all reasonable inferences from the facts in evidence that are "reasonable, fair, and legitimate." *Allridge v. State*, 762 S.W.2d 146, 156 (Tex.Crim.App.1988). The purpose of closing argument is to assimilate the evidence to assist the factfinder in drawing proper conclusions from the evidence. *Gaddis v. State*, 753 S.W.2d 396, 400 (Tex.Crim.App.1988). The jury is then free to accept or reject such conclusions and inferences. *Id.* Counsel is afforded virtually unlimited latitude in this regard as long as the argument is supported by the evidence and made in good faith. *Porter v. State*, 832 S.W.2d 383, 386 (Tex.App.-Houston [1st Dist.] 1992, no pet.). Conversely, a prosecutor may not use closing argument to get evidence before the jury that is outside the record and prejudicial to the accused. *Everett v. State*, 707 S.W.2d 638, 641 (Tex.Crim.App. 1986).

▮ The first statement by the prosecutor was a reasonable deduction from the evidence and an answer to opposing counsel's argument. During the punishment phase of trial, appellant's pastor, Mike Martin, testified that he had heard appellant described as a racist/skinhead type of person during the guilt/innocence phase of trial. Martin went on to express his opinion that appellant was not a racist. Following Martin's testimony, the prosecutor requested that the jury be permitted to see appellant's tattoo, which was described as a swastika. The record does not specifically state whether the jury saw the tattoo at that moment, but defense counsel's argument leads to the conclusion that the jury saw the tattoo prior to the State's argument. During his argument, defense counsel stated:

> [B]y the way, the only thing we know about [appellant]—that is, brought to you from the witness stand or shown to you—is that he's got the tattoo on his shoulder. Some of you might be offended by that type of tattoo. He says it's from their tattoo shop. He testified about that his aunt's tattoo shop. Loot [sic] of people are offended by tattoos, but that's where we are.

A prosecuting attorney is entitled to call jurors' attention to what the prosecutor and jurors were equally able to observe. *Jordan v. State*, 646 S.W.2d 946, 948 (Tex. Crim.App.1983). By calling the jury's attention to appellant's shaved head and his tattoo, the prosecutor made a reasonable deduction from the evidence.

■ The prosecutor's argument was also a response to the defense attorney's argument during the punishment phase that this was appellant's first offense and that the jury should assess probation as his sentence for murder. Defense counsel argued that, based on appellant's "background, the way he was raised up, the way he interacted with Mr. Martin and others," appellant was a good candidate for probation. The prosecutor argued that appellant's family sought mercy from the jury, but the jury could not ignore the "Southern Boys' attitude" and give appellant probation. The prosecutor's argument that appellant was a member of a group that engaged in hatred to the degree that he would tattoo a symbol of that group on his shoulder was a permissible answer to appellant's argument that the jury should be lenient with punishment. *See Rische v. State*, 834 S.W.2d 942, 949 (Tex.App.-Houston [1st Dist.] 1992, pet. ref'd) (prosecutor's argument that jury should consider defendant's character was proper response to defendant's plea for the jury to assess probation).

■ With regard to whether appellant was cheered by an audience, the evidence does not support the prosecutor's argument. Although there was evidence that several people lived in the trailer from time to time and that some of those people were actually in the trailer when the shooting took place, there is no evidence that this audience was cheering appellant as he shot and killed Ramdhanny. Therefore, the trial court erred in overruling appellant's objection to that portion of the prosecutor's argument.

■ Having found error, we must determine whether the error warrants reversal. *Mosley v. State*, 983 S.W.2d 249, 259 (Tex.Crim.App.1998). A non-constitutional error does not require reversal of the judgment unless it affected substantial

rights by having a substantial and injurious effect or influence in determining the jury's verdict. Tex.R.App. P. 44.2(b); *Rich v. State*, 160 S.W.3d 575, 577 (Tex.Crim. App.2005). Substantial rights are not affected if, after examining the record as a whole, we have a fair assurance that the error did not influence the jury or had but a slight effect. *Guevara v. State*, 152 S.W.3d 45, 53 (Tex.Crim.App.2004). In assessing the likely effect of improper jury argument in the punishment phase, we consider: (1) the severity of the misconduct (prejudicial effect), (2) curative measures, and (3) the certainty of the same punishment being assessed without the misconduct. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex.Crim.App.2004).

There were no curative measures taken here because the trial court overruled appellant's objection. Thus, the second factor weighs in appellant's favor. The first and third factors, however, weigh against a finding of harm. The evidence showed that appellant chased Gomez and Ramdhanny into the trailer, murdered Ramdhanny in cold blood, and fired the gun at Gomez until he ran out of bullets. Appellant, at trial, attempted to blame an unknown person for the crime and stated that all the witnesses who testified against him, including Gomez, were not telling the truth. The prosecutor's comment that others were cheering appellant while he was shooting the victims likely did not have much prejudicial effect on appellant's punishment given the evidence against him. Therefore, the first factor does not weigh in favor of finding harm. Similarly, the third factor weighs in the State's favor as it is unlikely the jury considered whether appellant was cheered by onlookers in punishing him for his conduct.

After balancing the appropriate factors, we find the argument that others were

cheering appellant was harmless. Appellant's second issue is overruled.

The judgment of the trial court is affirmed.

EDELMAN J., dissenting.

RICHARD H. EDELMAN, Justice, dissenting.

I disagree with two aspects of the majority opinion. The first is its conclusion that the State's punishment phase closing argument, describing appellant's tattoo, was a reasonable deduction from the evidence:

> But you can't live in this world and not recognize that there are a group of people who are *taking that label, "Southern good ol' boys," and flashing it over a big Confederate flag* and meaning something, whatever they wanted that expression to mean. . . .
>
> You can say to yourself that it's a coindence [sic] that the victim in this case was an African–American man. *If the shooter comes over there with the* shaved head and *flag on his shoulder,* you can think that's a coincidence if you want to, but I submit to you it is no coincidence. What happens in this case is that that man was hanging out at that house behind that trailer and went over there and shot himself a black man and probably had an audience when he did it. Don't you know *all those other kids over there with the Southern boys' tattoos* and skinheads were standing over there cheering him on? Don't you know they were? I have no doubt.

(emphasis added). Although this closing argument described appellant's tattoo as

being a flag on his shoulder and having the label, "Southern good 'ol boys" over a big Confederate flag, the record contains no testimony, photo, exhibit, or any other *evidence* providing any image or description whatever of his tattoo's appearance.

The majority opinion concludes that the argument was nevertheless a reasonable deduction of the evidence because the jury saw the tattoo. Whether the jury actually saw the tattoo is not clear from the record. However, even if they did, this court cannot see the tattoo, and we have no evidence showing or describing it with which to independently and objectively determine whether the State's argument is a reasonable deduction from what the jury saw, if anything.

Despite this, the majority also relies on statements the prosecutor and defense counsel made during arguments as reflecting that the State's argument was a reasonable deduction from the evidence. Apart from the fact that even the prosecutor's own statements describing the tattoo were in fundamental conflict regarding its appearance,[1] the obvious fallacies of this approach are that: (1) it uses argument to bootstrap the existence and content of information that was not in evidence with which to then determine the validity of other argument as if the information was in evidence; (2) it purports to perform a correct and meaningful appellate review of whether the argument was a reasonable deduction from any actual evidence while instead abandoning our responsibility to do so; and (3) it concludes, in effect, that "evidence" can exist for appellate purposes even though it is outside the record (and possibly non-existent),[2] and (incredibly)

---

**1.** The prosecutor described appellant's tattoo as a swastika in a bench conference outside the hearing of the jury; but the only testimony regarding appellant's tattoo sought, but failed, to show that it was a confederate flag,

not a swastika; and the prosecutor stated during argument that it was a Confederate flag.

**2.** *See, e.g., Jack v. State,* 149 S.W.3d 119, 121 n. 1 (Tex.Crim.App.2004) (noting that an ap-

that appeals courts may speculate on what such non-evidence might show, even without any actual basis from outside the record from which any such conclusion could reasonably be drawn.

I further disagree with the majority opinion in that, even if the evidence properly reflected that appellant had a swastika or Confederate flag tattoo (as well as a shaved head, which the evidence does reflect), there is no evidence that appellant ever behaved in a racially derogatory manner of any kind or otherwise that this murder was in any way racially motivated. It does not follow logically that, because a person has a shaved head and tattoo, he wants to kill African–Americans. Yet there is nothing else in our record to support a causal connection between the murder and a racist motive other than appellant's appearance and the victim's ethnicity. Therefore, rather than being a reasonable deduction from any evidence, the State's argument of racial motivation was merely an invitation to use highly-charged emotional indignation, combined with stereotypical assumptions, as a substitute for actual evidence.

With regard to harm, appellant had no prior felony convictions, and the range of punishment was extremely wide, from community supervision to life imprisonment. The evidence showed that the murder was committed in a brutal and premeditated manner. However, depending on the perspectives of the jurors, the perceived motive for the murder (as between racial hatred and jealousy regarding a woman, which the evidence did support) could have had a material influence on the length of sentence imposed, particularly in that the sentencing verdict required a unanimous decision of the jury. The racial motivation contention was a central part of the State's punishment argument, and, in addition to the portions of the punishment

argument complained of, the prosecutor further emphasized:

> But you all know what Danny Mixon did, and the rest of them will have to deal with that reality: the Southern boy's attitude, this kind of South. I grew up in the South. I married a Southern boy. I come from a long line of good 'ol boys and I'm trying to raise one.

In overruling appellant's objections that this racial motivation was not supported by evidence, the trial court not only failed to take curative measures, it affirmatively compounded the error by telling the jury, in effect, that this motive was, in fact, supported by evidence. In light of these considerations, it would be purely speculative to conclude that the jury would have imposed the maximum life sentence without the error.

In conclusion, rather than serving our most vital function to preserve the integrity of the justice system, endorsing the State's argument in this case invites abuse and, in turn, unjust decisions. I would therefore sustain appellant's second issue, reverse the judgment as to punishment, and remand that portion of the case to the trial court for further proceedings.

pellate court may not consider factual assertions that are outside the record).