Affirmed and Memorandum Opinion on Remand filed September 30, 2008








Affirmed and Memorandum Opinion on Remand filed September 30, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-04-00027-CR

_______________

 

DANNY LEE MIXON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 262nd District Court

Harris County,
Texas

Trial Court Cause
No. 969,414

                                                                                                                                               


 

M E M O R A N D U M   O P I N I O N   O N   R E M A N
D

 








Appellant Danny Lee Mixon was
convicted of murder and sentenced to life in prison.  On original submission,
appellant argued the trial court erred by (1) allowing an attorney to testify
during the guilt-innocence phase of trial in violation of the attorney-client
privilege and (2) overruling appellant=s objections to improper jury
argument during the punishment phase of trial.  We affirmed appellant=s conviction on November 3, 2005.  Mixon
v. State, 179 S.W.3d 233 (Tex. App.CHouston [14th Dist.] 2005).  The
Court of Criminal Appeals vacated our judgment and remanded for this court to
address whether the crime-fraud exception to the attorney-client privilege
applies to this case.  Mixon v. State, 224 S.W.3d 206, 212 (Tex. Crim.
App. 2007).  On remand, we affirm.

Background

Appellant took a hand gun from
Northshore Video, the store where he worked, drove to a trailer where Connie
Gomez and Dwayne Ramdhanny were finishing a meal, and knocked on the door. 
When Gomez and Ramdhanny opened the door, appellant fired a shot that hit
Ramdhanny in the face after traveling through Gomez=s hand, which was outstretched
because Gomez attempted to intervene.  Ramdhanny retreated into the trailer
where appellant followed him and shot him several more times.  Gomez ran to the
bathroom, closed the door, and hid in the shower.  Appellant stood at the
bathroom door, fired the remaining bullets from the gun, and left the trailer. 
Ramdhanny=s injuries were fatal, but Gomez survived.

Standard of
Review

Appellant argues that review of the
applicability of the attorney-client privilege is de novo.  See Henderson v.
State, 962 S.W.2d 544, 551 (Tex. Crim. App. 1997).  In Henderson,
the Court of Criminal Appeals noted that at least one federal circuit court
held that mixed questions of law and fact regarding the applicability of the
attorney-client privilege to particular communications must be reviewed de
novo.  Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386,
1413 (11th Cir. 1994).  Because the appellant in Henderson filed a
motion to suppress pursuant to article 38.23 of the Code of Criminal Procedure,
the court recognized that the issue of the crime-fraud exception to the
attorney-client privilege and the operation of article 38.23 of the Code of
Criminal Procedure were important issues of first impression and reviewed the
applicability of the attorney-client privilege de novo.  Henderson, 962
S.W.2d at 551.  The court noted, however, that historical fact findings are
reviewed in the light most favorable to the trial court=s ruling.  Id.  Therefore, we
review the trial court=s application of law to the facts de novo but will defer to
the trial court=s determination of historical facts supported by the record. 
See State v. Martinez, 116 S.W.3d 385, 391B92 (Tex. App.CEl Paso 2003, no pet.).








Attorney-Client
Privilege

Appellant argues the trial court
erroneously allowed an attorney, Peter Heckler, to pierce the attorney-client
privilege during the guilt-innocence stage of trial by testifying that
appellant asked him to conceal the murder weapon.  Peter Heckler was the
attorney of record for Northshore Video where appellant worked and the owner of
the gun kept at the store.  Heckler testified that appellant sought legal advice
and possible representation following the murder.  Heckler agreed to represent
appellant until he discovered that his own gun might have been used in the
offense.  Heckler explained to appellant that if his gun were the murder
weapon, he could not represent appellant.  Heckler also testified that
appellant wanted Heckler to dispose of the weapon used in the murder.  Heckler
picked up the gun from the store and ultimately turned the gun over to the
authorities.  

Prior to Heckler=s testimony before the jury, the
court held a hearing outside the presence of the jury to Agive some guidance to the lawyers
trying the case as to what type of evidence will be admissible.@  At that time, appellant argued
Heckler=s testimony was a violation of the
attorney-client privilege.  The trial court requested that Heckler tell the
court what appellant had asked Heckler to do with the weapon and the videotape.
Heckler responded:

MR. HECKLER:  He kept saying, you have to help me with
this.  And I said with what?  You know, I=m
not sure I can represent you.  And he goes, well, you know, there is more to it
than just that.  I said, are you talking about the gun?  Yes, I=m talking about the gun, it=s a problem, and it needs to be gone along with --

 

THE COURT: Who said that?

 

MR. HECKLER: The defendant.

 

THE COURT: He said the gun needs to be gone?

 

MR. HECKLER: Well, I don=t know if that=s the words he used, but the gist of the conversation
was the gun was incriminating as was the videotape.

 








THE COURT: And what did he want you to do about that?

 

MR. HECKLER: Help him.

 

THE COURT: Do what?

 

MR.
HECKLER: I construed that to mean get rid of it.  You have to understand B my apologies to Danny, but he=s not the brightest guy in the world.  I think he has
a little difficulty understanding the fact that I=m a lawyer first and that store out there is one of my clients.  And I
don=t know whether he=s
looking at me or B I was trying to make it clear, you know, I can=t be his employer and his lawyer, and I was trying to
clear that up in his mind.  So, we had a long conversation about that.  And I
was trying to, you know, impress upon him the fact that, you know, I=m an officer of the court and there are some things I
can=t do, and he kept saying, oh, you have to help me.

I think he
may have been speaking to me in that regard, thinking of me as a person that
ultimately has the decision to hire and fire and make decisions out there.  And
I=m trying to impress upon him, no, I=m an officer of the court and there are some things I
cannot and will not do.

So, the totality of the circumstances was that it was
clear to me that he was indicating the gun was a problem for him in the murder
investigation and prosecution as would be the videotape.

 

THE COURT: I don=t
have any doubt that everybody agrees that it was a problem for him if it could
be traced back to him.  The question is: What was it about the conversation
that made you convinced he wanted you to dispose of the gun and/or the
videotape?

 

MR. HECKLER: Well, speaking in the context of what I
have already said, and his limited capacity to understand what I was trying to
get across, I finally broke it down to the point where I said, do you need me
to get rid of the weapon and/or the videotape?  And he indicated, yes, that=s exactly what he wanted.

 

THE COURT: Okay.  Did you say it in terms of, are you
asking me to get rid of the videotape and the pistol, or was it in terms of you
offering to do it?  That=s what I am trying to get from you.

 








MR. HECKLER: It=s
difficult to B well, I think, you know, my recollection of it is he
clearly wanted me to get rid of the weapon, but I=m not sure about the videotape.

 

THE COURT: That=s
all I=m concerned about.  Let=s focus on that.  And I=ll ask this
again.  I mean, was he asking you, based on all the conversation, to get rid of
it or did you offer to get rid of it and then he said, yes, that=s what I want you to do?  Or did he say, you need to
help me, I want you to get rid of this pistol, hide it, throw it away, get rid
of it?

 

MR. HECKLER: Well, the way I was understanding the
conversation, again, based on him not being very articulate, was he wanted me
to get rid of the weapon.  And I finally just asked him if that=s what he meant, and he indicated, yes, that=s what he meant.

 

After listening to Heckler=s testimony, the trial court ruled
that it would permit only that part of Heckler=s testimony indicating that appellant
had asked him to get rid of the gun.  Before the jury, Heckler testified that
while he was asking appellant about the gun, appellant Aled [him] to believe that it was, in
fact, the murder weapon.@  The trial court called the attorneys to the bench and
instructed them to limit Heckler=s testimony to appellant asking
Heckler to dispose of the weapon.  After the exchange at the bench, Heckler
testified that appellant Awanted the gun not to be turned over to the police.@  After speaking with appellant,
Heckler took the gun from the store and replaced it with a virtually identical
gun.  Two days later he turned the gun over to the police.








Appellant contends his conversation
with Heckler is protected by the attorney-client privilege.  See Tex. R. Evid. 503.  A client has a
privilege to prevent the lawyer or lawyer=s representative from disclosing any
other fact that came to the knowledge of the lawyer or representative by reason
of the attorney-client relationship.  Tex.
R. Evid. 503(b)(2).  The State contends that the crime-fraud exception
to the attorney-client privilege applies to Heckler=s testimony.  Rule 503(d)(1) provides
that the attorney-client privilege does not apply if the lawyer=s services were knowingly sought or
obtained to further a criminal or fraudulent endeavor.  Whether the exception
applies turns on the client=s knowledge, not the attorney=s.  The attorney=s services must be sought or used to
further the activity in question.  See Henderson, 962 S.W.2d at 553. 
The crime-fraud exception only applies to communication concerning future acts
and does not apply where a client is seeking advice relating to crimes already
committed.  Id. at 555 (court distinguishes between situation where the
client reveals information to an attorney regarding the location of a kidnaping
victim without seeking the attorney=s assistance for any purpose beyond
defense of the criminal charges and a situation where the client sought the
attorney=s help to move the victim=s body). 

The party seeking to take advantage
of the crime-fraud exception must first present a prima facie showing that a
crime or fraud was ongoing or about to be committed.  Granada Corp. v. Hon.
First Court of Appeals, 844 S.W.2d 223, 227 (Tex. 1992); State v.
DeAngelis, 116 S.W.3d 396, 406 (Tex. App.CEl Paso 2003, no pet.).  Whether the
proponent has established a prima facie showing is a matter for the court to
decide.  DeAngelis, 116 S.W.3d at 406.  Second, the party must show that
the otherwise privileged communication relates to the crime or fraud.  See,
e.g., Arkla, Inc. v. Harris, 846 S.W.2d 623, 629B30 (Tex. App.CHouston [14th Dist.] 1993, orig.
proceeding). 

Resolution of appellant=s issue rests on whether he was
seeking representation for a past crime, the murder, or seeking help to commit
a future crime, the destruction of evidence.  To the extent that appellant=s statements involve past activity,
the attorney-client privilege requires that the attorney maintain
confidentiality.  Henderson, 962 S.W.2d at 555.  To the extent that an
ongoing crime is continuing, or a future crime is being contemplated, the
circumstances require disclosure to prevent the crime from continuing into the
future.  Id. 








In Clark v. State, the Court
of Criminal Appeals determined that the crime-fraud exception applies to Aone who, having committed a crime,
seeks or takes counsel as to how he shall escape arrest and punishment, such as
advice regarding the destruction or disposition of the murder weapon or of the
body following a murder.@  261 S.W.2d 339, 347 (Tex. Crim. App. 1953).  In Clark,
the court held that the crime-fraud exception included seeking and obtaining
advice concerning the destruction of evidence as opposed to an attorney=s mere knowledge of a continuing or
future crime.  Id.  In Henderson, the court, although not
confronted specifically with this issue, stated A[a] different situation would exist@ if the attorney had attempted to
erase evidence or if the client had sought the attorney=s help in doing so.  Henderson,
962 S.W.2d at 553.  In this case, appellant sought representation from Heckler
and requested that Heckler dispose of the weapon used in the murder. 

Appellant argues that after he
informed Heckler about potentially incriminating evidence against him, it was
Heckler who first suggested getting rid of the weapon and the videotape.  The
record reflects that the trial court focused on determining who initiated the
idea of disposing of the weapon.  The trial court determined that appellant
initiated the issue of disposing of the weapon, and ruled the communication was
not privileged.  On this determination of historical fact, we must defer to the
trial court=s decision.  See Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  The record reflects that appellant sought advice from Heckler
about the commission of a future crime, not merely representation on a past
crime.  Therefore, the State met the requirements of the crime-fraud exception
to the attorney-client privilege, and Heckler=s testimony was admissible. 
Appellant=s issue on remand is overruled.

The judgment of the trial court is
affirmed.

 

 

/s/        Leslie B. Yates

Justice

 

Judgment rendered and Memorandum
Opinion on Remand filed September 30, 2008.

Panel consists of Justices Yates,
Anderson, and Brown.

Do not publish C Tex.
R. App. P. 47.2(b).