Affirmed and Majority and Dissenting Opinions filed November 3, 2005









Affirmed and Majority and Dissenting Opinions filed November 3,
2005.

 

 

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-04-00027-CR

_______________

 

DANNY LEE MIXON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On
Appeal from the 262nd District Court

Harris
County, Texas

Trial
Court Cause No. 969,414

                                                                                                                                               


 

M A J O R I T Y  
O P I N I O N

 

Appellant
Danny Lee Mixon was convicted of murder and sentenced to life in prison.  In two issues, appellant argues the trial
court erred by: (1) allowing an attorney to testify during the guilt phase of
trial in violation of the attorney-client privilege and (2) overruling
appellant=s objections to improper jury
argument during the punishment phase of trial. 
We affirm.

Background








Appellant
took a hand gun from Northshore Video, the store where he worked, drove to a
trailer where Connie Gomez and Dwayne Ramdhanny were finishing a meal, and
knocked on the door.  When Gomez and
Ramdhanny opened the door, appellant fired a shot that hit Ramdhanny in the
face after traveling through Gomez=s hand, which was outstretched
because Gomez attempted to intervene. 
Ramdhanny retreated into the trailer where appellant followed him and
shot him several more times.  Gomez ran
to the bathroom, closed the door, and hid in the shower.  Appellant stood at the bathroom door, fired
the remaining bullets from the gun, and left the trailer.  Ramdhanny=s injuries were fatal, but Gomez
survived.

                                                      Attorney
Client Privilege

In
his first issue, appellant argues the trial court erroneously allowed an
attorney, Peter Heckler, to pierce the attorney-client privilege during the
guilt stage of trial by testifying that appellant asked him to conceal the
murder weapon.  Peter Heckler was the
attorney of record for Northshore Video where appellant worked, and the owner
of the gun kept at the store.  Heckler
testified that appellant sought legal advice and possible representation following
the murder.  Heckler explained to
appellant that if his gun was the murder weapon he could not represent
appellant.  Heckler testified that
appellant asked him not to turn the gun over to the police, but Heckler
ultimately turned the gun over to the authorities.  Prior to Heckler=s testimony before the jury, the
court held a hearing outside the presence of the jury to Agive some guidance to the lawyers
trying the case as to what type of evidence will be admissible.@ 
At that time, appellant argued Heckler=s testimony was a violation of the
attorney-client privilege.  The trial
court stated appellant=s Aobjection [was] well taken,@ but ruled the evidence was
admissible.  When Heckler testified
before the jury, appellant failed to pursue his objection. 








Initially,
we address the State=s preservation argument. 
The State contends appellant failed to preserve error by not pursuing
his objection before the jury.  To
properly preserve error for appellate review, the complaining party must make a
timely, specific objection.  Tex. R. App. P. 33.1(a).  However, when the court, out of the jury=s presence, hears and overrules
objections to evidence, those objections need not again be made before the jury
when the evidence is actually presented to the jury in order to preserve
error.  Tex.
R. Evid. 103(a); Ethington v. State, 819 S.W.2d 854, 858 (Tex.
Crim. App. 1991).  Therefore, by making
an objection outside the presence of the jury, appellant preserved error.

Appellant
contends his conversation with Heckler is protected by attorney-client
privilege.  See Tex. R. Evid. 503.  Invocation of the privilege depends on the
existence of an attorney-client relationship, which has been defined as a
contractual relationship where an attorney agrees to render professional
services for a client.  State v.
Martinez, 116 S.W.3d 385, 392 (Tex. App.CEl Paso 2003, no pet.); Tanox,
Inc. v. Akin, Gump, Strauss, Hauer & Feld, 105 S.W.3d 244, 254 (Tex.
App.CHouston [14th Dist.] 2003, pet.
denied).  The relationship may be
expressly created by contract, or it may be implied from the actions of the
parties.  Martinez, 116 S.W.3d at
392.  Texas Rule of Evidence 503 protects
confidential communications made for the purpose of facilitating the rendition
of professional legal services to the client. 
Tex. R. Evid. 503(b)(1); Huie
v. DeShazo, 922 S.W.2d 920, 922 (Tex. 1996).

Here,
the evidence does not conclusively establish an attorney-client relationship
between Heckler and appellant.  While
appellant sought representation from Heckler, Heckler testified that he told
appellant he could not represent him if his gun was used to commit the
crime.  Heckler testified he told
appellant that the gun kept at the video store belonged to him and if the gun
was the murder weapon, he could be called as a fact witness and could not
represent appellant.  After speaking with
appellant over the telephone, Heckler went to the store, picked up the gun, and
stored it in a safe place.  Ultimately,
Heckler turned the gun over to the police. 
Heckler also testified about a videotape security system in the
store.  He stated that appellant had
asked him to destroy the video from the day of the murder.  Heckler testified that the video that day
could not be found.  Heckler=s testimony does not support a
finding that an attorney-client relationship existed.  Because no relationship was established, the
trial court did not abuse its discretion in admitting Heckler=s testimony.  See Jackson v. State, 516 S.W.2d 167,
175 (Tex. Crim. App. 1974) (when a fact issue is raised with regard to
attorney-client privilege, it is within trial court=s discretion to determine whether
attorney-client relationship existed). 
Appellant=s first issue is overruled.








                                                       Improper
Jury Argument

In his second issue, appellant
argues the trial court erred by overruling appellant=s objections to improper jury argument portraying
appellant as a member of a racist group who committed a hate crime.  Appellant complains of the following argument
made by the prosecutor in the punishment phase:

 

THE STATE:  But you can=t live in this world and not recognize that there are a group
of people who are taking that label, ASouthern good ol= boys,@ and flashing it over a big
Confederate flag and meaning something, whatever they wanted that expression to
mean.

DEFENSE COUNSEL:         If it please the Court, this is not
supported by any of the evidence. We object to the form of the argument,  Your Honor.

THE COURT:            Overruled.

THE STATE:  You can say to yourself that it=s a coindence (sic) that the victim
in this case was an African-American man. 
If the shooter comes over there with the shaved head and flag on his
shoulder, you can think that=s a coincidence if you want to, but I submit to you it is no
coincidence.  What happens in this case
is that that man was hanging out at the house behind that trailer and went over
there and shot himself a black man and probably had an audience when he did it.  Don=t you know all those other kids over
there with the Southern boys= tattoos and skinheads were standing over there cheering him
on?  Don=t you know they were?  I have no doubt.

DEFENSE COUNSEL:         If it please the Court, there=s no evidence to support any of that
testimony at all.  I object.

THE COURT:            Overruled.








Appellant
contends the State=s argument was improper because there was no evidence that
(1) appellant behaved toward anyone in a racist manner or (2) appellant was
cheered by an audience when the shooting occurred.  Proper jury argument must fall into one of
four general categories: (1) summation of the evidence, (2) reasonable
deduction from the evidence, (3) answers to argument of opposing counsel, or
(4) pleas for law enforcement.  Guidry
v. State, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999).  The prosecutor may draw all reasonable
inferences from the facts in evidence that are Areasonable, fair, and legitimate.@ 
Allridge v. State, 762 S.W.2d 146, 156 (Tex. Crim. App.
1988).  The purpose of closing argument
is to assimilate the evidence to assist the fact‑finder in drawing proper
conclusions from the evidence.  Gaddis
v. State, 753 S.W.2d 396, 400 (Tex. Crim. App. 1988).  The jury is then free to accept or reject
such conclusions and inferences.  Id.  Counsel is afforded virtually unlimited
latitude in this regard as long as the argument is supported by the evidence
and made in good faith.  Porter v.
State, 832 S.W.2d 383, 386 (Tex. App.CHouston [1st Dist.] 1992, no
pet.).  Conversely, a prosecutor may not
use closing argument to get evidence before the jury that is outside the record
and prejudicial to the accused.  Everett
v. State, 707 S.W.2d 638, 641 (Tex. Crim. App. 1986).

The first statement by the
prosecutor was a reasonable deduction from the evidence and an answer to
opposing counsel=s argument. 
During the punishment phase of trial, appellant=s pastor, Mike Martin, testified that he had heard
appellant described as a racist/skinhead type of person during the
guilt/innocence phase of trial.  Martin
went on to express his opinion that appellant was not a racist.  Following Martin=s testimony, the prosecutor requested that the jury be
permitted to see appellant=s tattoo, which was described as a swastika.  The record does not specifically state
whether the jury saw the tattoo at that moment, but defense counsel=s argument leads to the conclusion that the jury saw
the tattoo prior to the State=s argument. 
During his argument, defense counsel stated:  

 

[B]y the way, the only thing we know about [appellant]
C that is, brought to you from the witness stand or
shown to you C is that he=s got the
tattoo on his shoulder.  Some of you
might be offended by that type of tattoo. 
He says it=s from their tattoo shop.  He testified about that his aunt=s tattoo shop. 
Loot [sic] of people are offended by tattoos, but that=s where we are.

 








A prosecuting
attorney is entitled to call to the attention of the jurors what they had an
opportunity equally to observe.  Jordan
v. State, 646 S.W.2d 946, 948 (Tex. Crim. App. 1983).  By calling the jury=s attention to appellant=s shaved head and his tattoo, the
prosecutor made a reasonable deduction from the evidence.

The
prosecutor=s argument was also a response to the
defense attorney=s argument during the punishment phase that this was
appellant=s first offense and the jury should
assess probation as his sentence for murder. 
Defense counsel argued that based on appellant=s Abackground, the way he was raised up,
the way he interacted with Mr. Martin and others,@ appellant was a good candidate for
probation.  The prosecutor argued that
appellant=s family sought mercy from the jury,
but the jury could not ignore the ASouthern Boys= attitude@ and give appellant probation.  The prosecutor=s argument that appellant was a
member of a group that engaged in hatred to the degree that he would tattoo a
symbol of that group on his shoulder was a permissible answer to appellant=s argument that the jury should be
lenient with punishment.  See Rische
v. State, 834 S.W.2d 942, 949 (Tex. App.CHouston [1st Dist.] 1992, pet. ref=d) (prosecutor=s argument that jury should consider
defendant=s character was proper response to
defendant=s plea for the jury to assess
probation).

With
regard to whether appellant was cheered by an audience, the evidence does not
support the prosecutor=s argument.  Although
there was evidence that several people lived in the trailer from time to time
and that some of those people were actually in the trailer when the shooting
took place, there is no evidence that this audience was cheering appellant as
he shot and killed Ramdhanny.  Therefore,
the trial court erred in overruling appellant=s objection to that portion of the
prosecutor=s argument.








Having
found error, we must determine whether the error warrants reversal.  Mosley v. State, 983 S.W.2d 249, 259
(Tex. Crim. App. 1998).  A
non-constitutional error does not require reversal of the judgment unless it
affected substantial rights by having a substantial and injurious effect or
influence in determining the jury=s verdict.  Tex.
R. App. P. 44.2(b); Rich v. State, 160 S.W.3d 575, 577 (Tex.
Crim. App. 2005).  Substantial rights are
not affected if, after examining the record as a whole, we have a fair
assurance that the error did not influence the jury or had but a slight effect.  Guevara v. State, 152 S.W.3d 45, 53
(Tex. Crim. App. 2004).  In assessing the
likely effect of improper jury argument in the punishment phase, we consider:
(1) the severity of the misconduct (prejudicial effect), (2) curative measures,
and (3) the certainty of the same punishment being assessed without the misconduct.  Hawkins v. State, 135 S.W.3d 72, 77
(Tex. Crim. App. 2004).

There
were no curative measures taken here because the trial court overruled
appellant=s objection.  Thus, the second factor weighs in appellant=s favor.  The first and third factors, however, weigh
against a finding of harm.  The evidence
showed that appellant chased Gomez and Ramdhanny into the trailer, murdered
Ramdhanny in cold blood, and fired the gun at Gomez until he ran out of
bullets.  Appellant, at trial, attempted
to blame an unknown person for the crime and stated that all the witnesses who
testified against him, including Gomez, were not telling the truth.  The prosecutor=s comment that others were cheering
appellant while he was shooting the victims likely did not have much
prejudicial effect on appellant=s punishment given the evidence against him.  Therefore, the first factor does not weigh in
favor of finding harm.  Similarly, the
third factor weighs in the State=s favor as it is unlikely the jury
considered whether appellant was cheered by onlookers in punishing him for his
conduct.  

After
balancing the appropriate factors, we find the argument that others were
cheering appellant was harmless. 
Appellant=s second issue is overruled.

The
judgment of the trial court is affirmed.

 

 

 

/s/        Leslie Brock Yates

Justice

 

Judgment rendered
and Opinion filed November 3, 2005.

Panel consists of
Justices Yates, Edelman, and Guzman (Edelman J., dissenting).

Publish C Tex.
R. App. P. 47.2(b).